IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BARBARA FALKNER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 16 C 4806 |
| v. ) | |
| ) | Magistrate Judge |
| NANCY A. BERRYHILL, Acting ) | Maria Valdez |
| Commissioner of Social Security,[1] ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

This action was brought under 42 U.S.C. § 405(g) to review the final decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Plaintiff Barbara Falkner's ("Plaintiff") claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons that follow, Plaintiff's motion for summary judgment is granted. The case is remanded for further proceedings consistent with this Opinion.

## BACKGROUND

### I.  PROCEDURAL HISTORY

On November 14, 2011, Plaintiff filed claims for DIB and SSI, alleging disability since November 17, 2010. (R. 43.) The claims were denied initially and

---

[1] Nancy A. Berryhill is substituted for her predecessor, Carolyn W. Colvin, pursuant to Federal Rule of Civil Procedure 25(d).

upon reconsideration, after which Plaintiff timely requested a hearing before an Administrative Law Judge ("ALJ"). (*Id.*) On December 13, 2013, Plaintiff, represented by counsel, appeared and testified before ALJ Stephen Templin. (R. 62–119.) Medical expert ("ME") Ashok Jilhewar, M.D., and vocational expert ("VE") Natalie Maurin also testified. (*Id.*)

On March 25, 2014, the ALJ denied Plaintiff's claims for DIB and SSI, finding her not disabled under the Social Security Act. (R. 43–61.) The Social Security Administration ("SSA") Appeals Council then denied Plaintiff's request for review, leaving the ALJ's decision as the final decision of the Commissioner and, therefore, reviewable by the District Court under 42 U.S.C. § 405(g). *See Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005) (R. 27–33.)

## II. ALJ DECISION

The ALJ found at step one that Plaintiff had not engaged in substantial gainful activity at any time material to his decision. (R. 46.) At step two, the ALJ concluded that the medical evidence established that Plaintiff had "at least one, medically determinable, 'severe' impairment, or its equivalent."[2] (*Id.*) The ALJ indicated at step three that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 49.) The ALJ then assessed Plaintiff's residual functional capacity ("RFC") and determined that Plaintiff retained the capacity to perform the full range of light work. (R. 49–50.) At

---

[2] The ME testified that Plaintiff had the severe impairments of facet joint arthritis of the lumbar spine, disc herniation at three levels of the cervical spine, and obesity. (R. 67–68.)

2

step four, the ALJ concluded that Plaintiff was able to perform any of her past relevant work. (R. 56.) Because of this determination, the ALJ found that Plaintiff was not disabled under the Act. (R. 57.)

## DISCUSSION

I. **ALJ LEGAL STANDARD**

Under the Social Security Act, a person is disabled if he has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a). In order to determine whether a claimant suffers from a disability, the ALJ considers the following five questions in order: (1) Is the claimant presently unemployed? (2) Does the claimant have a severe impairment? (3) Does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations? (4) Is the claimant unable to perform his former occupation? and (5) Is the claimant unable to perform any other work? 20 C.F.R. § 416.920(a)(4).

An affirmative answer at either step three or step five leads to a finding that the claimant is disabled. *Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992). A negative answer at any step, other than at step three, precludes a finding of disability. *Id.* The claimant bears the burden of proof at steps one through four. *Id.* Once the claimant shows an inability to perform past work,

the burden then shifts to the Commissioner to show the claimant's ability to engage in other work existing in significant numbers in the national economy. *Id.*

## II. JUDICIAL REVIEW

Section 405(g) provides in relevant part that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Judicial review of the ALJ's decision is limited to determining whether the ALJ's findings are supported by substantial evidence or based upon legal error. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Stevenson v. Chater*, 105 F.3d 1151, 1153 (7th Cir. 1997). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). This Court may not substitute its judgment for that of the Commissioner by reevaluating facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *Skinner*, 478 F.3d at 841; *see also Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008) (holding that the ALJ's decision must be affirmed even if "'reasonable minds could differ'" as long as "the decision is adequately supported") (internal citation omitted).

The ALJ is not required to address "every piece of evidence or testimony in the record, [but] the ALJ's analysis must provide some glimpse into the reasoning behind her decision to deny benefits." *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001). In cases where the ALJ denies benefits to a claimant, "he must build an accurate and logical bridge from the evidence to his conclusion." *Clifford*, 227 F.3d

4

at 872. The ALJ must at least minimally articulate the "analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005); *Murphy v. Astrue*, 496 F.3d 630, 634 (7th Cir. 2007) ("An ALJ has a duty to fully develop the record before drawing any conclusions . . . and must adequately articulate his analysis so that we can follow his reasoning . . . ."); *see Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005).

Where conflicting evidence would allow reasonable minds to differ, the responsibility for determining whether a claimant is disabled falls upon the Commissioner, not the court. *See Herr v. Sullivan*, 912 F.2d 178, 181 (7th Cir. 1990). However, an ALJ may not "select and discuss only that evidence that favors his ultimate conclusion," but must instead consider all relevant evidence. *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994); *see Scrogham v. Colvin*, 765 F.3d 685, 698 (7th Cir. 2014) ("This 'sound-bite' approach to record evaluation is an impermissible methodology for evaluating the evidence.").

### III. ANALYSIS

On appeal, Plaintiff argues that remand is warranted based upon the Appeals Council's failure to consider new and material evidence. [Doc. No. 13, at 6–14.] Plaintiff further asserts that the ALJ erred in assessing her subjective symptom statements and credibility. (*Id.*) For the reasons that follow, this matter is remanded for further proceedings consistent with this Opinion.

## A. The Appeals Council's Decision

The Court first addresses Plaintiff's argument that remand is warranted because the Appeals Council committed an error of law in declining to review the ALJ's decision in light of the new evidence she supplied—MRIs of the cervical and lumbar spines from June 2014, records from her primary care physician dated May 21, 2014 through July 28, 2014, and a physical therapy intake evaluation dated June 10, 2014. (R. 414–29.) The Court's ability to review the Appeals Council's decision "is dependent on the grounds on which the Council declined to grant plenary review." *See Stepp v. Colvin*, 795 F.3d 711, 722 (7th Cir. 2015).

The Appeals Council, in determining whether to review a claim that has been denied by an ALJ, must evaluate additional evidence that the claimant submits, provided the evidence is both "new" and "material" and relates to the period on or before the date of the ALJ's decision. 20 C.F.R. § 404.970(b); *Farrell v. Astrue*, 692 F.3d 767, 770–771 (7th Cir. 2012). The Council will then grant *de novo* review of the ALJ's decision only "if it determines based on the supplemented record that the ALJ's conclusions are contrary to the weight of the evidence." *Stepp,* 795 F.3d at 721. Here, the Appeals Council indicated that it had "considered . . . the additional evidence . . . [and] found that this information does not provide a basis for changing" the ALJ's decision. (R. 27–28.) The minimal information provided by the Appeals Council in its denial of Plaintiff's request for review does not allow the Court to conclude that the Council accepted the additional records as new and material evidence. *See Stepp*, 795 F.3d at 725. As the Seventh Circuit held in *Farrell*, the

Court therefore proceeds on the assumption that the Appeals Council found the additional evidence not new and material and turns next to determining whether that finding is erroneous. *See id*. (citation omitted).

Evidence is "new," within the meaning of the regulations, if it was "not in existence or available to the claimant at the time of the administrative proceeding" and "material" "if it creates a reasonable probability that the Commissioner would have reached a different conclusion had the evidence been considered." *Stepp*, 795 F.3d at 725 (quotations omitted). Moreover, "if new and material evidence is submitted, the Appeals Council shall consider the additional evidence only where it relates to the period on or before the date of the [ALJ] hearing decision." *See* 20 C.F.R. § 416.1470(b). Here, there can be no question that the additional records are "new" because they post-date the ALJ's March 25, 2014 hearing decision. The Court's focus, therefore, is on whether or not these new pieces of evidence are "material."

Contrary to Plaintiff's assertions, Dr. Khan's treatment notes are not material. Not only are these handwritten notes are barely legible, they do not appear to reflect any physical examinations or clinical findings. (R. 416, 418–20.) Instead, they are merely a recitation of Plaintiff's subjective complaints, much like the older treatment notes that were already part of the record before the ALJ. There is little possibility, much less a reasonable probability, that consideration of Dr. Khan's treatment notes would have altered the outcome in this case. *See Stepp*, 795 F.3d at 725.

7

In contrast, the MRI results and physical therapy evaluation are both "new" and "material." The MRI of the lumbar spine, performed on June 3, 2014, revealed disc pathology at the L3-L4 and L4-L5 levels causing bilateral neuroforaminal narrowing, effacing the nerve roots bilaterally, and compromising the spinal canal. (R. 428–29.) At L5-S1, an annular tear is effacing the thecal sac causing bilateral neuroforaminal narrowing that effaces the nerve root bilaterally. (R. 429.) The MRI of the cervical spine, performed on June 6, 2014, revealed an annular tear at the C4-C5 level that effaces the thecal sac and herniated discs at the C5-C6 and C6-C7 levels causing neuroforaminal narrowing and effacing the nerve roots. (R. 426–27.)

These results are drastically different from the 2008 MRI of the lumbar spine, which revealed only mild degenerative arthritis, and the 2008 MRI of the cervical spine, which revealed disc herniations at C4-C5, C5-C6, and C6-C7, with only slight displacement noted at the adjacent portions of the thecal sac. (R. 329–30.) Furthermore, it cannot reasonably be said that these MRI results do not speak to Plaintiff's condition as it existed at or prior to the time of the administrative hearing. *See Fieldhouse v. Astrue*, No. 09 C 6358, 2012 WL 426702, at *9 (N.D. Ill. Feb. 8, 2012) ("Clearly, the disc dessication [sic] present at each level in the thoracic spine and L4–5, slight leftward rotatory scoliotic curvature at the upper thoracic spine, disc bulges at T–4–5 through T11–12, mild loss of intervertebral disc space height at L4–5, disc extrusion at L4–5, and other findings did not all occur in the time between September 20, 2008 and November 28, 2008."); *Riley v. Colvin*, No. 13 C 6252, 2014 WL 6883603, at *6 (N.D. Ill. Dec. 5, 2014) ("it seems highly unlikely

that the conditions revealed in the June 2012 MRI failed to develop or manifest during the eighteen-month period . . . and instead, as Defendant advances, only worsened within a mere four weeks after [the ALJ's decision]"; *see also Bush v. Astrue,* 571 F. Supp. 2d 866, 875 (N.D. Ill. 2008) (holding that tests completed within three months of the ALJ's decision that documented impairments of which the plaintiff had complained for years were material).

The ME testified that 96% of patients with the conditions present in the 2008 MRIs improve within 90 days, based on radiological findings. (R. 74–75, 79.) He indicated that without updated imaging or "proper clinical findings," he could not give an opinion as to the existence or severity of those conditions during the relevant time period. (R. 75, 79.) Thus, the 2014 MRI results and physical examination findings (including decreased range of motion, strength, flexibility, and balance, and other functional deficits) from the June 2014 physical therapy evaluation are precisely the type of evidence the ME testified was both absent and necessary to determine the severity of Plaintiff's impairments after her 2012 consultative examination. (R. 65–66, 71.)

Again, to meet her burden of materiality Plaintiff does not have to demonstrate that it is more likely than not that this additional evidence would have changed the outcome of the ALJ's decision. *See Willis v. Apfel*, 116 F. Supp. 2d 971, 976 (N.D. Ill. 2000). Instead, she just needs to show that there is a "reasonable probability that the Commissioner would have reached a different conclusion had the evidence been considered." *Perkins v. Chater*, 107 F.3d 1290, 1296 (7th Cir.

1997). Here, "the new medical evidence fills certain gaps in the record that concerned the ALJ, and provides documentation of specific impairments." *Bush*, 571 F. Supp. 2d at 875. In other words, the MRI results and physical examination findings provide objective support that would tend to substantiate Plaintiff's hearing testimony and other statements pertaining to her alleged limitations. Thus, there is at least a reasonable probability that the ALJ might have assessed the severity of Plaintiff's conditions differently had this evidence been available for consideration. On remand, the Commissioner must consider this newly-submitted evidence in reassessing the severity of Plaintiff's impairments.

B.   **The Credibility Determination**

Plaintiff next argues that the ALJ improperly assessed her subjective symptom statements and credibility.[3] An ALJ's credibility determination is granted substantial deference by a reviewing court unless it is "patently wrong" and not supported by the record. *Schmidt v. Astrue,* 496 F.3d 833, 843 (7th Cir. 2007); *Powers v. Apfel,* 207 F.3d 431, 435 (7th Cir. 2000); *see also Elder,* 529 F.3d at 413 (holding that in assessing the credibility finding, courts do not review the medical

---

[3] In 2016, the Commissioner rescinded SSR 96-7p and issued SSR 16-3p, eliminating the use of the term "credibility" from the symptom evaluation process, but clarifying that the factors to be weighed in that process remain the same. *See* SSR 16-3p, 2016 WL 1119029, at *1, *7 (March 16, 2016). The ruling makes clear that ALJs "aren't in the business of impeaching claimants' character," but does not alter their duty to "assess the credibility of pain *assertions* by applicants, especially as such assertions often cannot be either credited or rejected on the basis of medical evidence." *Cole v. Colvin*, 831 F.3d 411, 412 (7th Cir. 2016) (emphasis in original). However, the SSA recently clarified that SSR 16-3p only applies when ALJs "make determinations on or after March 28, 2016," and that SSR 96-7p governs cases decided before the aforementioned date. *See* Notice of Social Security Ruling, 82 Fed. Reg. 49462 n.27 (Oct. 25, 2017). The ALJ issued his opinion on March 25, 2014. (R. 57.) Therefore, the ALJ properly applied SSR 96-7p. Nonetheless, SSR 16-3p will apply on remand. *See* Notice of Social Security Ruling, 82 Fed. Reg. 49462 n.27 (Oct. 25, 2017).

evidence *de novo* but "merely examine whether the ALJ's determination was reasoned and supported"). An ALJ must give specific reasons for discrediting a claimant's testimony, and "[t]hose reasons must be supported by record evidence and must be 'sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.'" *Lopez ex rel. Lopez v. Barnhart,* 336 F.3d 535, 539–40 (7th Cir. 2003) (quoting *Zurawski,* 245 F.3d at 887–88); *see* SSR 96-7p, 1996 WL 374186, at *4 (S.S.A. 1996).

The lack of objective evidence is not by itself reason to find a claimant's testimony to be incredible. *See Schmidt v. Barnhart,* 395 F.3d 737, 746–47 (7th Cir. 2005). When evaluating a claimant's credibility, the ALJ must also consider "(1) the claimant's daily activity; (2) the duration, frequency, and intensity of pain; (3) the precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of medication; and (5) functional restrictions." *Scheck v. Barnhart,* 357 F.3d 697, 703 (7th Cir. 2004); *see also* SSR 96-7p at *3. An ALJ's "failure to adequately explain his or her credibility finding . . . is grounds for reversal." *Minnick v. Colvin,* 775 F.3d 929, 937 (7th Cir. 2015).

Here, the ALJ stated that he did not "credit" Plaintiff's allegations regarding her subjective symptoms. (R. 54.) Plaintiff raises several challenges to the ALJ's adverse credibility determination, arguing that the ALJ improperly assessed her credibility based upon: (1) her receipt of unemployment compensation, (2) her allegedly inconsistent statements about her daily activities, and (3) her limited

11

treatment and the lack of medical evidence corroborating her allegations. [Doc. No. 13, at 10–14.] The Court briefly addresses each of these issues in turn.

### 1. *Unemployment Compensation*

First, Plaintiff asserts that the ALJ erred by drawing negative inferences from her receipt of unemployment compensation following her alleged onset date. The ALJ is correct that the receipt of unemployment benefits may adversely impact a claimant's credibility, because a claimant's application for unemployment benefits is a representation to "state authorities and prospective employers that [she] is able and willing to work." *Schmidt*, 395 F.3d at 746. However, "attributing a lack of credibility to [applying for or receiving unemployment benefits] is a step that must be taken with significant care and circumspection. All of the surrounding facts must be carefully considered." *Scrogham*, 765 F.3d at 699. Plaintiff does not dispute that it was appropriate for the ALJ to consider her receipt of unemployment benefits in assessing her credibility; rather, Plaintiff argues that the ALJ failed to consider the "surrounding facts." The Court disagrees.

At the hearing, the ALJ and Plaintiff's counsel questioned her regarding the unemployment compensation. (R. 87–95.) Plaintiff testified that she was fired from her job in November 2010, and received unemployment compensation through May 2012. (*Id.*) She applied for disability in November 2011, and admitted that she continued to look for work until approximately early 2012, when her pain prevented her from doing so. (*Id.*) There is an obvious inconsistency between claiming an *ability* to work for purposes of obtaining unemployment compensation and claiming

an *inability* to work for purposes of obtaining social security benefits. The Court finds that the ALJ adequately inquired into the circumstances surrounding Plaintiff's receipt of unemployment benefits, and therefore finds no error in the ALJ's reliance on the inconsistency between receiving unemployment compensation and applying for disability benefits as one of several factors in evaluating Plaintiff's credibility. *See Scrogham*, 765 F.3d at 699.

### 2. *Inconsistent Statements*

While the Court finds no error in the ALJ's discussion of Plaintiff's receipt of unemployment compensation benefits, the ALJ's remaining reasons for his adverse credibility determination are insufficient and not supported by substantial evidence. For example, the ALJ further rejected Plaintiff's allegations by concluding that, although Plaintiff "has alleged consistent worsening of her pain and other symptoms over time, she has offered inconsistent reports concerning her daily activities." (R. 51.) While the ALJ briefly summarized Plaintiff's various reports regarding her activities of daily living, he offered little in the way of explanation as to why he found those allegations to be incredible or inconsistent with one another. (R. 50–51.) Plaintiff is correct that neither the ALJ nor the Commissioner has identified any substantively inconsistent statements. The ALJ's failure to address which of Plaintiff's statements (if any) he found credible, which statements he discounted, and why, is inconsistent with the applicable regulation and Seventh Circuit precedent. *See, e.g.,* SSR 96-7p, at *4 ("The reasons for the credibility finding must be grounded in the evidence and articulated in the determination or decision.

13

It is not sufficient to make a conclusory statement that 'the individual's allegations have been considered' or that 'the allegations are (or are not) credible.' "); *McKinzey v. Astrue,* 641 F.3d 884, 890 (7th Cir. 2011) ("the ALJ must explain her decision in such a way that allows us to determine whether she reached her decision in a rational manner, logically based on her specific findings and the evidence in the record.").

### 3. *Limited Treatment*

Finally, the ALJ noted that since her alleged disability onset date, Plaintiff's treatment history consisted of five visits to her chiropractor in late 2012 and throughout 2013, and a single outpatient visit with her primary care physician, Dr. Khan, in 2012 for the purpose of obtaining disability paperwork. (R. 53.) Although a history of sporadic treatment or the failure to follow a treatment plan can undermine a claimant's credibility, an ALJ must first explore the claimant's reasons for the lack of medical care before drawing a negative inference. *See* SSR 96-7p, at \*7; *see also Shauger v. Astrue*, 675 F.3d 690, 696 (7th Cir. 2012); *Moss v. Astrue*, 555 F.3d 556, 562 (7th Cir. 2009); *Craft v. Astrue*, 539 F.3d 668, 679 (7th Cir. 2008). The SSA has expressly endorsed the inability to pay as an explanation excusing a claimant's failure to seek treatment. *See* SSR 96-7p, at \*8; *Roddy v. Astrue*, 705 F.3d 631, 638 (7th Cir. 2013). Indeed, "claimants without health insurance are likely to delay medical treatment, even for serious conditions, because they fear the financial consequence of treatment." *Wendt v. Colvin,* No. 14 C 0910, 2015 WL

14

4730180, at *11 (N.D. Ill. Aug. 10, 2015) (citing *Garcia v. Colvin*, 741 F.3d 758, 762 (7th Cir. 2013)).

Here, although the ALJ acknowledged that Plaintiff's limited medical treatment during the relevant period "might be explained, in part, [by] a lack of health insurance and/or financial resources," he nevertheless went on to state that "the lack of referral for free or low cost care would not suggest significant concern on the part of presumably ethical and competent health care providers for the claimant's ability to function without such intervention." (R. 54.) This attitude is troubling to the Court. Plaintiff testified that she was unaware such "free or low cost care" existed, and stated that her lack of insurance prevented her from seeing Dr. Khan more frequently. (R. 116–17.) Additionally, Plaintiff reported to her chiropractor, Dr. Gabr, in early 2013 that she was unable to attend physical therapy as often as she would have preferred because she had no health insurance. (R. 408.) It hardly seems appropriate for the ALJ to use a doctor's failure to inform his patient about the availability of low-cost healthcare as a basis for undermining Plaintiff's credibility.

Additionally, the Court is somewhat puzzled by the ALJ's statement that "the lack of any documented prescription of analgesic medication does not even correlate with the medically moderate degree of pain she has alleged." (R. 53.) The ALJ specifically noted that Plaintiff did not report the use of any prescribed medication at her February 2012 consultative examination; however, the report indicates that Plaintiff was taking methocarbamol in addition to ibuprofen as needed. (R. 53, 390.)

15

Methocarbamol is a muscle relaxant that can only be obtained with a prescription from a physician.[4] The ALJ further commented that Dr. Khan's March 2012 progress note indicated that Plaintiff was only taking ibuprofen for her pain. (R. 53, 409.) Yet that same progress note also reflects prescriptions for Medrol, Lyrica, and gabapentin. (R. 409.) Furthermore, the record demonstrates that Plaintiff reported the use of prescription medications—including diclofenac, Flexeril, Lyrica, gabapentin, and Medrol—on numerous occasions. (*See, e.g.*, R. 257, 272, 280, 291, 299.) If there was any confusion on the ALJ's part regarding Plaintiff's current medications or medication history, he could have easily sought clarification from Plaintiff at the hearing. Instead, the ALJ chose not to address the issue of medications at all.

Lastly, although the ALJ correctly concluded that since the alleged onset date, "there is very little medical evidence corroborating [Plaintiff's] statements regarding the location and intensity of her pain and other symptoms," the lack of objective evidence is not by itself reason to find a claimant's testimony to be incredible. (R. 52.); s*ee Schmidt,* 395 F.3d at 746–47. Further, in this case "the lack of objective evidence may have a reasonable explanation: Plaintiff's lack of medical insurance." *Nagel v. Colvin*, No. 14 C 8060, 2016 WL 278881, at *7 (N.D. Ill. Jan 22, 2016). As discussed above, Plaintiff lost her health insurance after being terminated from her job in November 2010. She specifically testified that she was unable to see Dr. Khan more often due to her lack of insurance, and Dr. Gabr's records also indicate that Plaintiff was prevented from receiving more frequent treatment

---

[4] https://www.drugs.com/methocarbamol.html

16

because she had no insurance. (R. 116–17, 408.) Without insurance, Plaintiff did not have the means to obtain updated imaging or other objective evidence. It is not clear from the ALJ's opinion that he adequately considered this fact in discrediting Plaintiff's subjective allegations based upon the lack of objective evidence substantiating her claims.

The Seventh Circuit has emphasized that not all of the ALJ's reasons for disbelieving a claimant have to be valid "as long as *enough* of them are." *Halsell v. Astrue*, 357 F. App'x 717, 722-23 (7th Cir. 2009) (emphasis in original); *Simila v. Astrue*, 573 F.3d 503, 517 (7th Cir. 2009) ("not flawless" is different from "patently wrong"). However, based on the above shortcomings and, viewing the record as a whole, the Court concludes that the ALJ's adverse credibility determination is inadequate and not supported by substantial evidence.

On remand, the ALJ is advised to consider Plaintiff's testimony in light of the recent guidance provided by SSR 16-3p and encourages the Commissioner to use all necessary efforts to build a logical bridge between the evidence in the record and her ultimate conclusions, whatever those conclusions may be. *See, e.g., Myles v. Astrue,* 582 F.3d at 678 ("On remand, the ALJ should consider all of the evidence in the record, and, if necessary, give the parties the opportunity to expand the record so that he may build a 'logical bridge' between the evidence and his conclusions"); *Smith v. Apfel,* 231 F.3d 433, 437 (7th Cir. 2000); *Luna v. Shalala,* 22 F.3d 687, 693 (7th Cir. 1994). The Commissioner should not assume that any other claimed errors

not discussed in this Order have been adjudicated in her favor. On remand, the Commissioner therefore must carefully articulate her findings as to every step.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for summary judgment is granted in part. The Court finds that this matter should be remanded to the Commissioner for further proceedings consistent with this Order.[5]

SO ORDERED.                    ENTERED:

*Maria Valdez*

DATE:    **January 5, 2018**        _____
                                            **HON. MARIA VALDEZ**
                                            **United States Magistrate Judge**

---

[5] The Court rejects Plaintiff's alternative request for a reversal with an award of benefits. "An award of benefits is appropriate . . . only if all factual issues involved in the entitlement determination have been resolved and the resulting record supports only one conclusion—that the applicant qualifies for disability benefits." *Allord v. Astrue,* 631 F.3d 411, 415 (7th Cir. 2011). Here, factual issues have not yet been resolved, and it is not the purview of this Court to gather or reweigh evidence. Therefore, remand for further proceedings is the appropriate remedy.